**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In re Parentage of | No. 46344-0-II |
| AC, | |
| Minor. | UNPUBLISHED OPINION |
| LW, | |
| Respondent,, | |
| v. | |
| ZC, | |
| Appellant, | |
| and | |
| WW, | |
| Respondent. | |
| In re AC | |
| CT and DT, | |
| Petitioners, | |
| v. | |
| ZC; and LW, | |
| Respondents. | |

BJORGEN, A.C.J. — ZC[1] appeals the trial court's order denying a major modification to

the parenting plan for his child, AC, which would have transferred primary custody to him from

the mother, LW. ZC argues that (1) the trial court improperly applied the major modification

standard under RCW 26.09.260, (2) there is not substantial evidence in the record to support the

---

[1] We refer to the parties by their initials in order to retain privacy.

trial court's findings of fact, and such findings do not support its conclusion of law that he is not entitled to a change of custody, and (3) the trial court abused its discretion when it declined to follow the recommendation of the guardian ad litem that ZC be AC's primary parent. In addition, LW requests attorney fees under RCW 26.26.140 and RAP 18.

We hold that (1) ZC waived his challenge to the trial court's application of the major modification standard, (2) substantial evidence in the record supports the findings that LW is mentally stable and did not abandon AC, and such findings support the conclusion that ZC did not meet his burden to justify a change of custody under the major modification standard, (3) the trial court did not abuse its discretion in declining to follow the GAL's recommendation, and (4) LW is not entitled to attorney fees.

Accordingly, we affirm the trial court and deny LW's request for attorney fees.

FACTS

LW gave birth to AC in September 2010. She petitioned the trial court to determine parentage, and in April 2013, it determined that ZC was AC's biological father. ZC and LW agreed to a parenting plan under which LW was the primary residential parent and ZC was given no guaranteed residential time:

3.5     Residential Schedule / Parenting Plan

The primary residence of the child shall be with Petitioner, [LW], who is designated custodian solely for the purpose of other state and federal statutes.

[LW] shall be designated the custodian of the child, and the child shall reside with [LW] at all times.

[ZC] shall have no residential time with the child unless agreed to between the parties.

Clerk's Papers (CP) at 277.

2

A year later, ZC sought modification of the final parenting plan under RCW 26.09.260, seeking primary custody of AC. In April 2014, the trial court held a two-day hearing to determine whether modification was appropriate. The trial court heard from several parties, including LW, ZC, and a couple who had taken care of AC while LW was away in New York. The court also heard from a GAL who, among other things, recommended that ZC be designated AC's primary residential parent.

In its ruling, the trial court applied the modification standard, rather than the initial custody determination standard. In so reasoning, the trial court stated that because there was already a parenting plan in place, it was ZC's burden to show that a change of custody was appropriate. The court found that while ZC had not met his burden for a major modification, he had presented sufficient evidence for a minor modification.[2] Thus, the trial court concluded that the initial parentage order dated April 12, 2013, "should be **adjusted/modified** into a long distance parenting plan," which granted ZC residential time with AC. CP at 229-30, 237 (alteration in original). The trial court specifically found:

> This Court finds that the Respondent has not met or demonstrated the burden of a major modification.

> This Court does not find a substantial change in the circumstance of the child or the non-moving party.

> This Court finds the parent who did not have any parenting residential schedule previously, . . .is now requesting one. The Court does believe this child is bonded to the Respondent/Father and has a relationship with him.

> This Court did not find any abuse, threatening behavior or danger to this child by Petitioner/Mother's former husband.

---

[2] Consistent with the case law and the trial court, this opinion refers to the modification authorized under RCW 26.09.260(1) as a "major modification" and the adjustment authorized under RCW 26.09.260(5) as a "minor modification." Application of the minor modification standard is not challenged on appeal.

3

CP at 237. The trial court also orally ruled that LW had not abandoned AC and that LW had no mental health issues. ZC filed a motion for reconsideration, which the trial court denied. ZC appeals the trial court's order denying a major modification.

ANALYSIS

ZC raises three challenges to the trial court's order denying him primary residential custody of AC. ZC first argues that the trial court improperly applied and used the major modification standard under RCW 26.09.260 in determining which parent should have primary custody. Second, ZC argues that there is not substantial evidence in the record to support the trial court's findings and such findings fail to support its conclusion that he is not entitled to a change of custody under the major modification standard. Third, ZC argues that the trial court abused its discretion when it declined to follow the GAL's recommendation that ZC be the primary custodial parent of AC.[3] ZC's challenges fail.

I. STANDARD OF REVIEW

We review a trial court's parenting plan for an abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, 133 S. Ct. 889 (2013). A trial court abuses its discretion when it makes a decision that "is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* at 35. We treat the trial court's findings of fact as

---

[3] ZC does not challenge the trial court's denial of his motion to reconsider in his assignments of error. His only discussion of it in his opening brief is to describe the trial court's denial of his motion in the statement of the case. From this, we must conclude that ZC is not challenging the denial of reconsideration on appeal. If he were, the challenge would fail. ZC's motion for reconsideration was based on texts that LW sent. Allegedly, they demonstrated that LW wanted to make ZC the primary parent of AC. The texts, however, could just as reasonably be interpreted to mean that LW simply wanted to let ZC know that she wanted him to be involved in AC's life as the father. Thus, the trial court did not abuse its discretion in denying the motion for reconsideration based on this evidence.

verities as long as they are supported by substantial evidence. *Id*. at 35. "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id*. at 35. We review the trial court's conclusions of law by determining whether the findings of fact that are supported by substantial evidence in turn support those conclusions. *In re Marriage of Fahey*, 164 Wn. App. 42, 55-56, 262 P.3d 128 (2011).

## II. WAIVER

ZC argues that the trial court abused its discretion by applying an incorrect standard for a major modification of a parenting plan. We hold that ZC waived this issue by failing to raise it in the trial court.

With exceptions not relevant here, this court in its discretion "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). ZC did not raise the issue regarding the major modification standard to the trial court. In fact, ZC endorsed the trial court's major modification standard in his post-trial motion for reconsideration. Therefore, we hold that ZC waived this challenge.

## III. FINDINGS AND CONCLUSIONS

Next, we find the trial court did not abuse its discretion when it concluded that there was no substantial change in AC's or LW's circumstances. In making this determination, we examine whether the findings are supported by substantial evidence in the record and whether this conclusion is supported by the trial court's findings that LW had not abandoned AC and that LW was mentally stable. *Katare*, 175 Wn.2d at 35; *Fahey*, 164 Wn. App. at 55-56.

In determining the initial custody placement of a child, a court's paramount concern is the best interest of the child. RCW 26.09.002; *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001). In contrast to the standard for the initial placement of a child, a court

shall not modify a prior custody decree or parenting plan unless it finds "that a substantial change has occurred in the circumstances of the child or the nonmoving party." RCW 26.09.260(1). Along with a showing of a substantial change of circumstances, a major modification must also be in "the best interest of the child and . . . necessary to serve the best interests of the child." *Id.* The court may make such a major modification based on facts that have arisen since the prior custody decree or that were unknown to the court at the time of the prior decree. *Id.*

> In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan, unless . . . (c) [t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.260(2)(c). "We employ a strong presumption against modification because changes in residences are highly disruptive to children." *In re Custody of Halls*, 126 Wn. App. 599, 607, 109 P.3d 15 (2005). We also are "generally reluctant to disturb a child custody disposition because of the trial court's unique opportunity to personally observe the parties." *In re Custody of Stell*, 56 Wn. App. 356, 366, 783 P.2d 615 (1989). Therefore, the burden is on the moving party to show that the modification is appropriate. *Halls*, 126 Wn. App. at 607.

The trial court's findings support the conclusion that ZC failed to meet his burden of proof under the major modification standard to show that LW or AC had a substantial change of circumstances. It found that LW had not abandoned AC at any point and had acted as her primary parent. The trial court found compelling that LW maintained Skype, cell phone, and e-mail contact with AC and that she sent money to a couple to take care of AC while she was away. LW's and the caretakers' testimony constitutes substantial evidence to support these trial court findings.

The trial court also found that LW had no mental health issues. Specifically, it found that while she had some depression, it was not unusual given the circumstances of these parties. For example, LW stood with a sign at ZC's apartment with a picture of AC and the statement: "Daddy I Miss You." Br. of Appellant at 7. LW testified, though, that she took this action because ZC "never ask[ed] about the baby. . . . I was really angry. . . . I ask him, come, let's make her first birthday." RP at 226-27. This testimony is sufficient to show that this was a reasonable response to the present situation. LW's testimony is substantial evidence that supports the trial court's finding that she had no mental health issues.

ZC is correct that conflicting evidence exists as to these findings, but "[s]o long as substantial evidence supports the finding, it does not matter that other evidence may contradict it." *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).[4] While ZC may not agree with the trial court's assessment of the evidence, substantial evidence in the record supports its findings that LW did not abandon AC and that she was mentally stable. In turn, these findings support the conclusion that ZC failed to meet his burden to show a substantial change in AC's or LW's circumstances to merit a change of custody under the major modification standard.

## IV. GAL RECOMMENDATION

ZC argues that the trial court abused its discretion because the GAL's recommendation to place AC with him was not followed. This argument fails because the trial court was free to find

---

[4] ZC also raises several arguments relating to his reluctance to pursue visitation with AC initially and his failure to challenge the initial parenting plan/parentage decree. However, findings pertaining to ZC are irrelevant to the trial court's conclusion regarding a modification, which requires a substantial change of circumstances to AC or LW. A substantial change of circumstances as to ZC is only relevant to the adjustment standard for a minor modification, which the trial court ordered.

that the major modification standard had not been met based on the other evidence presented at trial.

A GAL is appointed to investigate the child and family situation for the court and to make recommendations about appropriate parenting arrangements. RCW 26.10.130; *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380 (1997). "In effect, [the GAL] acts as a neutral advisor to the court and, in this sense, is an expert in the status and dynamics of that family who can offer a common sense impression to the court." *Id*. However, the trial court is "free to ignore [the GAL's] recommendations if they are not supported by other evidence or it finds other testimony more convincing." *Id*.

Here, the GAL recommended, in part, that ZC be AC's primary parent. The trial court in applying the major modification standard to a change of custody was free to find that the GAL's recommendation was not as convincing as the other evidence presented to the trial court, such as the testimony by LW and the caretakers. That testimony, noted above, supported the trial court's conclusion that LW remain the primary parent to AC.

ZC argues that because other evidence corroborated the GAL's recommendation, the court abused its discretion by departing from it. However, the GAL's recommendations in itself do not compel a trial court to find that ZC had met his burden under the major modification standard and that he should have been awarded custody. The evidence in the record supports the trial court's conclusion that ZC did not meet his burden and that LW should continue to remain the primary residential parent. Thus, we find that the trial court did not abuse its discretion in not following the GAL's recommendation to place AC with ZC.

ZC also argues that it was error for the trial court not to allow the GAL to interview LW. In direct contradiction to ZC's argument, the trial court did grant extra time for the GAL to

interview LW, but yet she was never interviewed. While it is true that the trial court in its oral ruling expressed concern that the GAL did not interview LW,[5] the trial court did actually allow the GAL 10 more hours to complete her investigation and ordered ZC to pay $750 in fees to the GAL. We hold that the trial court did not refuse to allow the GAL to interview LW, and therefore, did not err.

## V. ATTORNEY FEES

LW requests appellate attorney fees and other costs under RCW 26.26.140 and RAP 18. We decline to award fees and costs under RCW 26.26.140 because it only applies to actions brought under the Uniform Parentage Act, chapter 26.26 RCW. RCW 26.26.021 (emphasis added) ("This chapter applies to *determinations of parentage* in this state"). This case is governed by chapter 26.09 RCW, since it involves a modification to a parenting plan. LW, however, did not request fees under chapter 26.09 RCW.

We also deny LW's request for attorney fees on grounds that ZC's appeal is frivolous under RAP 18.1. An appeal is frivolous if there are no debatable issues on which reasonable minds can differ and is so totally devoid of merit that there was no reasonable possibility of reversal. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 787, 275 P.3d 339 (2012). Here, we find there were issues raised with enough merit that attorney fees would be inappropriate. Therefore, we deny attorney fees under RAP 18.1 as well.

---

[5] The trial court stated: "Unfortunately, in 37 hours you should be able to make a phone call to the mother, converse with her, understand her life circumstance, what is going on with her. I really think that is a significant lack in this particular investigation that occurred." Report of Proceedings at 291.

CONCLUSION

We hold that (1) ZC waived his challenge to the trial court's application of the major modification standard, (2) substantial evidence supports the trial court's findings and those findings support its conclusion that ZC failed to meet the major modification standard, and (3) the trial court did not abuse its discretion when it did not follow the recommendation of the GAL. Accordingly, we affirm the trial court's orders denying a major modification. We also deny LW's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.
_____
BJORGEN, A.C.J.

We concur:

Maxa, J.
_____
MAXA, J.

Lee, J.
_____
LEE, J.